# EXHIBIT B

RECEIVED
MAY 1 4 2009
LONNEL COATS

# KENNETH ERIC TRENT, P.A.
## A Full-Service Litigation Law Firm
831 E. Oakland Park Blvd.
Fort Lauderdale, Florida 33334

(954)567-5877     trentlawoffice@yahoo.com     (954)567-5872 [fax]

May 12, 2009

EISAI
C/o Robert Fogelman, Director of H.R.; and
Lonnel Coats, U.S. President and COO          Via Certified Mail
100 Tice Boulevard                             and facsimile
Woodcliff Lake, N.J. 07677

Re:   Termination of Michael P. Keeler

Dear Management:

I write to you on behalf of my client, Michael P. Keeler, in an effort to resolve what he views as the intolerably unfair circumstances of the termination of his employment on or about April 24, 2009. As will be detailed in this letter, EISAI is indebted to my client in many respects. Mr. Keeler requests a twelve-month severance package comprised of the following.

Immediately prior to termination Mr. Keeler was earning $8,466.00 monthly in base pay. 12 months of base pay is $101,592.00. In addition, at the time of his termination, Mr. Keeler had 28.5 paid vacation days accrued, having as their value the sum of $12,064.00. At that time Mr. Keeler was also due to be reimbursed for three MBA classes at the rate of $2,845.00 per class. There are _four_ MBA classes for which EISAI must reimburse Mr. Keeler. Documentation of the last class has not yet been received; Mr. Keeler will submit such paperwork as soon as it becomes available. This last class was completed on March 31, 2009, prior to the date of Mr. Keeler's termination. Had EISAI not made an unconditional promise to Mr. Keeler to pay his tuition, Mr. Keeler would never have enrolled in this MBA program. There is little question that EISAI is indebted to Mr. Keeler for this amount. The MBA tuition payment, both for those classes already taken and those contemplated in the future, was part of Mr. Keeler's compensation package at the time of his termination and, as such, is part and parcel of the severance 12-month severance package which we herein

request. To compensate Mr. Keeler as usual over the next twelve months, he is owed tuition of $45,510.

Mr. Keeler is owed incentive compensation for the third and forth quarters of 2008. With regard to his ONTAK objectives as set forth by Mr. Keith Woods, my client was expected to sell 890 ONTAK vials for the entirety of the second semester, a period of time running from October 1, 2008 to March 31, 2009. For this second semester, Mr. Keeler's actual sales were at or about 1,044 vials. In this respect, as in many others, Mr. Keeler exceeded the performance objectives set for him by EISAI. Mr. Keeler obtained more than 100% of the ONTAK goal. According to established company policy, Mr. Keeler would have received the 100% objective payout for the second semester of $4,500 plus a $107 per-vial payout on the vials sold in excess of the cap, not to exceed 120% of the stated goal. The cap does not come into play with these numbers. The end result is that $154 \times \$107 = \$16,478$. When added to the $4,500 payout due to Mr. Keeler for meeting the objective, the total amount due to Mr. Keeler for ONTAK is $20, 978 which does not include the third quarter payout and hold back of incentive dollars that takes place.

As to the Targretin objectives, it is Mr. Keeler's understanding that he met the 158 bottles. Mr. Keeler is due the 100% objective for Targretin of $2,625 plus the additional payout of $62 per bottle for those bottles achieved in March 2009. While Mr. Keeler does not currently have the exact totals, it is believed that by this point that information should be readily available to your corporation and Mr. Keeler requests that advise him in your response to this correspondence of his total Targretin sales through the end of March 2009.

Furthermore, a 12-month severance package would also involve compensating Mr. Keeler for his lost incentive bonus compensation. That, conservatively, is estimated at $30,000. Additionally, Mr. Keeler was terminated without cause, as further discussed below, prior to the vesting of the profit sharing program administered by EISAI. Had Mr. Keeler's employment continued through October of 2009, he would be "fully vested" and entitled to the amount of $7,000 EISAI paid in pursuant to the plan. The premature and unwarranted termination of Mr. Keeler's employment has also resulted in a loss to Mr. Keeler of his COBRA coverage. To maintain his health insurance under COBRA, Mr. Keeler will be required to pay, assuming he does not obtain comparable employment within such time, approximately $350 per month for the next twelve months. This is important to Mr. Keeler because he is a single father and needs to maintain insurance for the benefit of his 5 year old son, Angelo. The total of this is $4,300.

Mr. Keeler does not wish to engage in a protracted battle to obtain what is rightfully his. Mr, Keeler is still shocked and hurt by his termination and was a loyal and hardworking employee up until the last. By way of background, Mr. Keeler's mother, to whom he was very close, was suddenly stricken with cancer in August 2008. Me Keeler immediately informed his direct supervisor of the possibility that he would need to take leave in order to take care of his mother. Pursuant to instructions of management, Mr. Keeler properly filled out forms to request FMLA leave.

Shortly after the death of his mother on December 2, 2008, Mr. Keeler submitted documents, including medical records, to substantiate his need for recovery time pursuant to the FMLA. At all times during his leave, Mr. Keeler was responsive to requests for information and well within his rights to take time to recover from the sudden and devastating death of his mother and resulting emotional, mental and psychological conditions  Mr. Keeler returned to work on a timely basis, whereupon he was met with a substantial change in the circumstances of his employment. Where as before Mr. Keeler was highly regarded and always treated with respect by management personnel, Mr. Keeler encountered a hostile work environment. There were several subtle and some  not-so-subtle incidents in which Mr. Keeler was made to feel that he was a deficient employee due to his extended absence. It was particularly unfair to Mr. Keeler to subject him to such treatment in that he continued to meet his objectives despite the fact that he was out for an extended period of time. After returning to work and being there for a week or two, Mr. Keeler was asked on three consecutive afternoons by his direct supervisor whether he "thought he would be able to make it in tomorrow." This obviously is a veiled reference to Mr. Keeler's medical and family leave. As you are probably aware, retaliation against an employee for exercising his rights under Federal civil rights law is not viewed kindly by the courts and is in direct violation of the applicable statutes, including but not limited to the FMLA.

Mr. Keeler has encouraged me to take a conciliatory approach in this correspondence and that is why I am reaching out to you in an effort to resolve this matter amicably. The severance package Mr. Keeler is requesting in this letter is comparable to those offered to employees similarly situated to Mr. Keeler and whose performance was not as recognized and lauded within the company as was his. I am in possession of letters from certain supervisory and management personnel commending Mr. Keeler for his "top performance" and leadership and for being a champion within the company.

In light of all of the above, I respectfully suggest that it is legally advisable and morally required that you make an offer to Mr. Keeler to resolve this dispute. If I do not hear

back from you with a substantive response within ten (10) business days, I will confer with Mr. Keeler and we will proceed in the manner which we believe best serves his interests. Should further steps be required, Mr. Keeler's demand will substantially increase.

Here is the total demand: $101,592 (base pay) + $12,064 (vacation pay) + $20,978 (ONTAK minimum) + $45,510 (tuition) + $2625 (Targretin minimum) + $30,000 (incentive bonus) + $4300 (health insurance premium) = **$217,069.00.**

Thank you for your time and understanding. I look forward to hearing from you soon.

Cordially,

Kenneth Eric Trent, Esq.

C: client.

KET:af