TO DEFE
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-CV-60959-WJZ-ZLOCH/ROSENBAUM

MICHAEL KEELER,

    Plaintiff,

v.

EISAI, INC., a foreign
Profit corporation,

    Defendant.
_____/

## PLAINTIFF MICHAEL KEELER'S RESPONSE TO DEFENDANT EISIA, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMES NOW the Plaintiff, MICHAEL KEELER, by and through his undersigned counsel, and hereby files this, his memorandum of law in opposition to Defendant's Motion to Dismiss, as follows:

This matter sounds in one count, a violation of Florida's Whistleblower Protection Act ("FWBPA"), Section 448.102(3), Fla. Stat. The gist of the claim is that Plaintiff MICHAEL KEELER ("KEELER"), who was a pharmaceutical sales person with EISAI, INC. ("EISAI"), was terminated for complaining about and objecting to EISAI's unlawful sales practices relating to its cancer drug, Ontak. In accordance with the terms of the FWBPA, KEELER is seeking injunctive relief, reinstatement to his former position or a substantially equivalent position or front pay in lieu of reinstatement, full backpay and fringe benefits, compensatory damages and attorneys' fees and costs.

Defendant contends that Plaintiff's complaint should be dismissed in accordance with the pleading standards set forth in *Bell Atlantic v. Towmbly*, 550 U.S. 544, 555 (2007). In *Twombly*, the Supreme Court heightened the pleading requirement of Fed. R. Civ. P. 8 by requiring that a complaint must "state a claim to relief that is plausible on its face." *Id.* at 562-563, 570[1]. Defendant sets forth

---

[1] This matter was first filed in the 17th Judicial Circuit Court in and for Broward County, Florida, and removed to this Court on the sole basis of diversity jurisdiction. The Florida courts follow the literal language of Fed. R. Civ. P. 8

1

three reasons why Plaintiff's complaint falls short of meeting the *Twombly* standard: 1) Plaintiff has failed to identify the law, rule or regulation EISAI allegedly violated with its sales practices; 2) Plaintiff failed to allege the he objected to or refused to participate in an EISAI activity, policy or practice that is itself a violation of a law, rule or regulation; and 3) Plaintiff's complaint failed to allege that Plaintiff was terminated as a result of his alleged objection or refusal to participate in an illegal activity on behalf of EISAI (Motion p. 2). Defendant's motion lacks merit in both fact and law.

First of all, and most basically, this matter is before the Court on the sole basis of diversity jurisdiction, and while the complaint itself might be subject to the *Twombly* heightened pleading standard, the Court is in fact bound by Florida law on the issues raised in Defendant's motion to dismiss. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The FWBPA is a remedial statute designed by the Florida Legislature "'to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public.'" *The Golf Channel v. Jenkins*, 752 So.2d 561, 562 (Fla. 2000), quoting *Arrow Air, Inc. v. Walsh*, 645 So.2d 422, 424 (Fla. 1994). As a remedial statute, the FWBPA must be liberally construed "in favor of granting access to the remedy provided by the Legislature". *Id.*, at 566.

Defendant's first contention, that Plaintiff failed to state a plausible claim for relief because he failed to state a particular law, rule or regulation that EISAI violated, has no basis in fact or law. Initially, Defendant's myopic view of the complaint's allegations misses the mark. The complaint clearly alleges that, from the outset, when EISAI first acquired the rights to Ontak, it was already aware of a warning letter sent by the United States Food and Drug Administration ("FDA") to the preceding owner of the rights to the drug stating that it was promoting the use of Ontak with false and misleading information as to its approved uses. In fact, the complaint alleges that Defendant acquired the rights to

---

and require only a short and plain statement of the grounds which show that the pleader is entitled to relief. Florida has not adopted the heightened pleading standard of *Twombly*.

Ontak a mere two (2) days after the FDA warning letter had been issued. That itself constituted a violation of 21 U.S.C. §255[2].

Using that allegation as its springboard, the complaint alleges that Defendant continued to promote the use and sale of Ontak with false and misleading information, simply to boost its sales. For example, at ¶ 11, the complaint clearly alleges: "Virtually immediately upon its acquisition of the full rights to Ontak, EISAI continued to illegally market Ontak, for uses for which it was not indicated or approved by the FDA. Despite the FDA's warning letter, EISAI directed its sales force, including Plaintiff KEELER, to continue illegally marketing Ontak for treatment of cancers for which it had not been approved by the FDA,….At no time had or has Ontak been approved by the FDA to treat any of these cancers."

Following ¶11, Keeler follows up with many and varied allegations as to how Defendant required—even forced—its sales personnel, including Keeler, to continue marketing Ontak, a highly toxic and dangerous drug, for treatment of cancers for which it was not approved by the FDA. For example, as soon as EISAI acquired the rights to Ontak, it held a sales training class under the direction of its Direction and Training Manager Darbi James, at which Plaintiff and the other sales personnel were instructed and given sales materials to be provided to purchaser physicians on how to market Ontak for non-FDA approved uses (¶ 11, Complaint). Additionally, Keeler pled that Defendant's management "directed Plaintiff and others in its sales force to mislead physicians regarding the imperative presence of the CD-25 factor in patients with [the sole kind of cancer Ontak was approved by the FDA to treat]"; "directed Plaintiff and the other salespersons to advise physicians that the CD-25 factor really had very little meaning to Ontak's response rate, which EISAI knew was not true….and in fact …knew that the FDA had already stated that Ontak was indicated **only** for CTCL patients who expressed the CD-25 marker." (¶14, Complaint). Keeler further alleged that Defendant provided him and the other sales

---

[2] Although this statute is not referenced in the complaint, if the Court indeed were to find that Keeler's complaint is deficient under *Twombly*, Keeler should still be afforded the opportunity to amend it. *See Fed. R. Civ. P.* 15.

representatives with numerous clinical studies "which promoted various uses of Ontak for treatment of conditions for which it was not indicated and for which it had not received FDA approval, and directed the sales representatives, including Plaintiff, to use these studies during sales calls to physicians" (¶ 15, Complaint). At ¶ 16 of the complaint, Plaintiff provided examples of how Defendant directed Plaintiff and the other sales people to "distribute, share and discuss these studies," to promote to Defendant's physician customers the use of Ontak for unapproved purposes. This included providing physician customers with "product cards [which] showed the difference between the discounted price and what could be charged to third party payors (such as insurance companies, Medicare or Medicaid) for reimbursement for the non-indicated use of Ontak" which Defendant called "marketing the spread." Additionally, Plaintiff alleged that Defendant encouraged him and his colleagues in the sales force to market Ontak to physicians for unapproved uses by offering reimbursement directly by Defendant for the drug in the event that third party payors refused to reimburse for the unapproved use of the drug (¶ 17, 18, Complaint).

Additionally, Plaintiff alleged at ¶ 19 of the Complaint that Defendant consistently provided updates to Plaintiff and the rest of the sales force on information and studies, information and events regarding the non-approved use of Ontak, and Plaintiff and his colleagues were supposed to use this material specifically to promote the non-approved use of Ontak to Defendant's physician customers.

Finally, at ¶¶ 21 and 23, Plaintiff alleged that Defendant offered high-end rewards and bonuses for the sale of Ontak for unapproved uses. And at ¶¶ 20-23, Plaintiff detailed how Defendant made sure to include sales of Ontak into its sales employees' sales quotas, such that the employees could not hope to make their quotas without significant sales of Ontak for unapproved use.

The remainder of the Plaintiff's complaint details Plaintiff's objections to Defendant's unabashed push of sales of this highly toxic and dangerous cancer drug to physicians for unapproved use, including: 1) leading a group of sales persons in the protesting of sales of Ontak by Defendant for

4

unapproved uses (¶23, Complaint); and 2) pushing to change the employees' compensation and bonus structure such that they were not forced to sell Ontak to physician customers for unapproved use in order to meet their sales quotas (¶23, Complaint). He also detailed the retaliation which followed his objections, including: 1) Defendant's Director of Lymphoma telling Plaintiff that he was not a "team player"; 2) getting a bad review on a "ride-along" from his direct supervisor after he warned a new colleague about the sale of Ontak for unintended uses; 3) and finally being terminated by the same person who accused him of not being a "team player" after Plaintiff objected to the sale of Ontak for non-approved uses on the grounds that Plaintiff "didn't live the EISAI values." The obvious inference is that the "EISAI values" included significant pressure on EISAI sales persons to sell a dangerous drug for uses for which it was not approved, including basing sales quotas and bonuses on a high percentage of such sales, and that sales persons like Plaintiff who objected or refused to act in such a manner were not "team players" and needed to be gone, without regard to their stellar performance.

Despite these highly detailed and clearly delineated allegations of wrongdoing, Plaintiff's objections to such wrongdoing, and Defendant's clear retaliation following his objections, including his termination for not "living the EISAI values" when he was in fact a top performer, the Defendant claims that Plaintiff's complaint is deficient because it fails to identify the law, rule or regulation which Defendant allegedly violated. This contention is factually incorrect and legally unsupportable.

First, Plaintiff did in fact allege in his complaint that Defendant violated the Veterans Health Care Act of 1992 and the False Claims Act, among others. If the citation to the Veterans Health Care Act is incorrect, then a simple amendment is the correct remedy. However, the Defendant's characterization of Plaintiff's False Claims Act allegation is simply incorrect. As Defendant points out, the provision of the False Claims Act cited by Plaintiff refers to individuals making false claims for payment to the United States Government. As alleged in Plaintiff's complaint, by promoting and selling Ontak to physicians specifically for uses which have not been approved by the FDA, and having the cost

of the drug reimbursed by third party payors **including Medicare**, Defendant has violated the False Claims Act. Further, by engaging in such actions and having the cost of the drug being reimbursed by Medicaid, the Defendant is violating state law as well, by cheating the state and federal governments out of moneys meant for reimbursement for legitimate services. Use of Ontak for non-approved uses and getting reimbursed for it by the state and federal governments is, reduced to its lowest common denominator, simple theft[3].

The Defendant's reliance on the Florida cases of *Schultz v. Tampa Elect. Co.,* 704 So.2d 605 (Ct. App. Fla. 1997); *Sussan v. Nova Southeastern University*, 723 So.2d 933 (Ct. App. Fla. 1999) and *Forrester v. John H. Phipps, Inc.,* 643 So.2d 1109 (Ct. App. Fla. 1994) is misplaced. In *Schultz*, the court determined that in expressing his concern regarding the effectiveness of his employer's conservation plans and programs, the plaintiff was not citing to a violation of a law, rule or regulation. Similarly, in *Sussan*, the

---

[3] Defendant's reliance on *Perdue v. Westpoint Home, Inc.,* 2007 WL 3202455 (N.D. Fla. 2007), *Little v. Foster Wheeler Constructors, Inc.,* 2010 WL 2035546 (S.D. Fla. 2010) and *White v. Purdue Pharma, Inc.,* 369 F.Supp.2d 1335 (M.D. Fla. 2005) is misplaced. In *Perdue*, the question involved whether a state workers' compensation retaliation claim could be removed to federal court in contravention of a state statute prohibiting such removal. No such issue exists in the instant case. In *Little*, the plaintiff had pled only issues of unsupported sexual harassment and general abuse of drugs in the workplace as well as drug testing irregularities. This Court held that violation of employer policies, in and of themselves, or general allegations of wrongdoing under general statutes which apply to the public at large, do not state a cause of action under the FWBPA. In this case, however, the Plaintiff has clearly alleged that Defendant is causing others (patients of physician customers or the physicians themselves) falsely to claim moneys from federal and/or state government third party payors by filing claims for the cost of a drug being used for purposes other than those for which it was approved by the FDA. It is of no moment that physicians can decide for themselves to utilize a particular drug for a non-FDA approved use. The issue here is that Plaintiff has alleged that the Defendant has pushed the drug Ontak in the marketplace to be used specifically and knowingly for non--approved uses through the use of deceptive marketing and discount pricing. And finally, *White* involved the issue of whether a whistleblowing employee had to be objecting to the employer's violation of an actual law, rule or regulation or simply have a good faith belief that his or her employer was doing so. That is not the issue in this case, either, as Plaintiff has alleged, and pled sufficient supporting facts to make plausible, that Defendant was indeed acting in violation of an actual law, rule or regulation. Moreover, federal interpretation of state law must be consistent with the State's interpretation. *See, e.g., Roland v. Florida East Coast Rwy., LLC*, Case No.: 3D02-1405 (Ct. App. Fla. 2003)(employee who repeatedly reported, objected to and refused to participate in "violations of federal and state laws " which violations created a substantial and specific danger to the public's safety, health, and welfare, including the following: a) Refusing to notify the [Environmental Protection Agency], [Department of Environmental Resource Management], and local departments about material leaks in the FEC's Miami Springs yard and of the contamination of air and ground water in the surrounding area, which includes homes within 200 feet and well fields for Miami-Dade County; b) Burglary upon a warehouse leased to an FEC tenant; and c) Warrantless, illegal wiretaps on FEC employees stated claim under FWBPA, disagreeing with federal court as to whether 49 U.S.C. § 20109, the federal whistleblower statute for railroad employees, pre-empted the FWBPA).

court found that the trial court had correctly dismissed the plaintiff's complaint because it failed to allege that plaintiff was terminated for objecting to any illegal activity. And finally, in *Forrester*, the plaintiff 's amended FWBPA complaint was dismissed when she alleged that she had objected to violations of public policy, not of any law, rule or regulation. Here, as in *Roland, supra,* Plaintiff clearly alleges that he objected to and complained about EISAI's violation of a law which "created a substantial and specific danger to the public's safety, health and welfare…."

The Defendant nevertheless attempts to characterize its compensation and bonus structure, about which Plaintiff alleges to have complained and objected, as, as in *Schultz* and *Sussan*, a mere internal policy; thus, Plaintiff's alleged objections to and complaints about these items does not amount to objections and complaints about a violation of a law, rule or regulation. This contention must fail. As Plaintiff's allegations in his complaint make absolutely clear, the Defendant's compensation and bonus structure were simply a cog in its machine of deceptive and unlawful marketing of a very dangerous drug for uses other than those for which it was intended and approved by the FDA. Thus, Defendant's compensation and bonus structure were integral to its sale of Ontak in violation of at least the False Claims Act.[4]

Moreover, a plaintiff under the FWBPA need not evidence that, in the course of his protected objections and/or complaints, he actually named the specific statute violated to his employer. *Dahl v. Eckerd Family Youth Alternatives, Inc.,* 843 So.2d 956 (Ct. App. Fla. 2003)(FWBPA plaintiff 's general objections that her employer was physically abusive to children, filed unfounded criminal charges against the children in their care as a means of punishment, failed to provide adequate treatment for the children and allowed or encouraged the children to use illegal drugs and alcohol sufficient to state a claim). It would be completely unreasonable to expect employees who see unlawful behavior by their

---

[4] For the same reason, Defendant's reliance on *New World Communications of Tampa, Inc. v. Akre*, Case No.: 2D01-529 (Ct. App. Fla. 2003) is inappropriate. The same is true of *Tyson v. Viacom, Inc.*, 760 So.2d 276 (Ct. App. Fla. 2000)(FWBPA complaint which alleged violation of injunction failed to state claim because injunction is not a law, rule or regulation).

employer and who then object to it or refuse to participate in it to cite precisely the law, rule or regulation being violated. For example, an employee may know that it is illegal for an employer who sells airplane parts to falsify its records of the parts sold, but not know the precise statute which criminalizes such conduct. By making the general allegation of the unlawful act and objecting or refusing to participate in it, the employee has met the requirements of the FWBPA. *See, Dahl, supar.*

Defendant next contends (Motion at pp. 10-14) that Plaintiff failed to allege that he objected to any illegal activity of Defendant. After reviewing pages 2-5, *supra*, which in fact summarize not only Defendant's unlawful acts but Plaintiff's clear objections to and complaints about them to several managers and supervisors of Defendant, it is simply disingenuous for Defendant to make this argument. Plaintiff's complaint is rife with allegations of his objections to and complaints about Defendant's unlawful conduct, at management meetings and to individual managers including Randy Lawson, Brad Pierson, Heather Percy and Larry Kristoff, and senior managers David Trexler, Steve Vickers, Keith Woods and Leslie Mirani (¶22, Complaint). In fact, at ¶ 23 of his complaint, Plaintiff stated that in approximately October 2008 at a sales meeting in Boston, Plaintiff and the other sales representatives discussed, besides basing compensation and bonuses on the sale of Ontak for unapprovied uses, "stopping the sales of Ontak for use outside the FDA approved uses…." The complaint makes amply clear that these complaints and objections were not about internal EISAI policy nor lack of effectiveness of company programs; rather, these were serious, real complaints about and objections to serious unlawful action by Plaintiff's employer. As the Florida Court of Appeals held in *Dahl, supra,* 843 So.2d 956, 958, "[o]n its face, [Keeler's] complaint without question states a cause of action under the private-sector act. [He] was an employee of …a private company that employed more than ten employees. [He] complained to [his] supervisors…about alleged violations of applicable rules, regulations and laws on the part of [his] coworkers. After [he] reported [his] concerns, [he] was fired."

For similar reasons, Defendant's final contention—that Plaintiff failed to allege that his termination was the result of any objection or refusal to participate in any illegal activity by Defendant is simply perverse. After fully detailing all of Defendant's alleged unlawful activity and his complaints about and objections to such activity, Plaintiff alleges that, although he was a top producer with Defendant, he was first given a bad "field report" on a "ride-along" with his direct supervisor, Randy Lawson, to whom Plaintiff had expressed his objections to Defendant's unlawful practices (¶ 26, Complaint). Following that, Plaintiff was told by a senior manager that Plaintiff was "not a team player." Plaintiff was then terminated by the same senior manager because he "didn't live the EISAI values" and because he had warned a colleague about the high volume of sales in her territory of Ontak for unapproved uses.[5] True, nobody at EISAI ever came right out and said to Mr. Keeler that EISAI was tired of his objections to and complaints about EISAI's unlawful conduct, but then employers are also too savvy nowadays to come right out and tell an employee that he is being terminated because he is black or too old, or, more *apropos* to the instant case, because he has filed a charge with the EEOC or the NLRB. Nevertheless, taking all allegations as true and drawing all inferences from those allegations as the Court must on a motion to dismiss, there is no room for doubt that Plaintiff has in fact more than sufficiently pled the plausibility that he was retaliated against by Defendant because of his protected activity under the FWBPA.

WHEREFORE, Plaintiff MICHAEL KEELER respectfully requests that Plaintiff's Motion to Dismiss be denied.

[SPACE INTENTIONALLY LEFT BLANK]

---

[5] This action by Defendant actually is a violation of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), but no charges were ever filed with the National Labor Relations Board.

Respectfully submitted,

SUSAN L. DOLIN, P.A.
Counsel for Plaintiff
9000 Sheridan Street
Suite 93
Pembroke Pines, FL  33024
Tel.:  954-862-2284
Fax:  954-862-2287
Email:  sdolin@dolinlawgroup.com


By: /s/  Susan L. Dolin, Esq.
FBN:  708690

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2010, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

SUSAN L. DOLIN, P.A.
**Counsel for Plaintiff**
9000 Sheridan Street
Suite 93
Pembroke Pines, FL  33024
Tel.:  954-862-2284
Fax:  954-862-2287
E-mail:  sdolinlaw@aol.com

By: s/  Susan L. Dolin
FBN:  708690

**SERVICE LIST**

**Keeler v. Eisai, Inc.**
**United States District Court**
**Southern District of Florida**
**Case No.: 10-cv-60959-WJZ-ZLOCH/ROSENBAUM**

Susan L. Dolin, P.A.
Counsel for Plaintiff
Susan L. Dolin, Esq.
FBN:  708690
9000 Sheridan Street
Suite 93
Pembroke Pines, Florida  33024
Tel.:  954-862-2284
Fax:  954-862-2287
Email:  sdolin@dolinlawgroup.com
*Via CM/ECF*


Squire, Sanders & Dempsey, LLP
Counsel for Defendant
Patricia E. Lowry, Esq.
FBN:  332569
Email: plowry@ssd.com
Amy Bloom, Esq.
FBN::  0506893
Email: amy.bloom@ssd.com
Maria Jose Moncada, Esq.
FBN:  0773301
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6198
Tel.:  561-650-7200
Fax:  561-655-1509
*Via CM/ECF*